McKinney, J.,
delivered the opinion of the Court.'
This was a bill for a partnership account. The complainant alleges that, for several years, he was a secret partner with the defendant, in a drug store, in the city of Nashville, carried on in the name of J. M. Zimmerman, under a verbal agreement between them, to share equally the profits of the business. The fact of partnership is expressly denied by the defendant. *41 To establish his interest as a partner in the concern, the complainant relies on the oral admission of the defendant, made to various persons, at different periods during the continuance of the alleged partnership. And to show that such was not the fact, and that the complainant’s only connection with the business was in the capacity of clerk, in the employ of defendant, resort is had to the same sort of evidence, namely, the verbal declarations of the complainant, often repeated, to the effect that he was not a partner with defendant in the business, hut simply a salaried clerk; and, in addition, the defendant relies upon the complainant’s implied admission in a more solemn form, contained in his answer to a hill in Chancery, to disprove the allegation of the present bill. _ It seems, from the allegations and proof in the cause, that on the 18th of November, 1850, McNairy & Hamiltan, druggists, of Nashville, (the firm consisting of the complainant, M. Hamilton and W. H. McNairy,) being about to fail, sold and transferred their stock to the defendant, . Zimmerman, who executed his several notes for the consideration agreed to be paid, payable in future instalments, which notes were transferred by McNairy and Hamilton to N. A. McNairy, as collateral security, to indemnify him on account of his liabilities, for the firm of McNairy and Hamilton.
The bill, in substance, charges, that about the time of the sale by McNairy and Hamilton to Zimmerman, the complainant, reduced to poverty by the failure of said firm, and deprived of the means of support for his family, proposed to Zimmerman, who was comparatively a stranger in Nashville, that he, the complainant, who was familiar with the business, -and had an exten *42 sive acquaintance in the community, would, as a secret partner, join with the former in the purchase of the said stock of drugs and- medicines from McNairy and Hamilton, and in carrying on said business in Nashville, upon the terms, that they should equally share the profits of the business. To this proposition, as the bill alleges, Zimmerman readily assented. The bill further states, in substance, that, being insolvent, and looking to his interest in the profits of this new business as the only means of furnishing a support for his increasing family; “ it was absolutely necessary that his (complainant’s) connection with Zimmerman in the purchase, should be kept secret, otherwise the whole object had in view, might at any moment- be defeated. Accordingly, the fact was not made known to the public,” and complainant “went into the new business, ostensibly, as cleric, and so held himself out to the world? &c.” But that in reality, he was a full and equal partner in the business, and so continued up to some time in 1856, when Zimmerman sold out the entire establishment, and denied that complainant had any interest as partner in the same, or any right to a share of the profits. The bill alleges that the complainant withdrew from the concern upwards of $4,000 00, and the defendant nearly $8,000 00; and that after this deduction, and an adjustment of all the liabilities of the concern, there remains a balance of clear profits of from ten to fourteen thousand dollars to be divided; and to one half of which, complainant, by the agreement, is entitled.
The answer denies, in strong terms, the existence of any agreement or understanding, that Hamilton was to *43 have any interest, or that he ever had any interest, as partner, in the purchase of the stock of drugs and medicines, or in the business carried on by the defendant, and positively asserts that he was merely employed and taken into the store as cleric, in the early part of the year 1852; and that he remained, and served in that capacity alone, until, in 1856, when defendant sold out the establishment; and that the money stated to have been drawn from the concern by the complainant, was received as compensation for his services as. clerk, and not otherwise.
This is an extraordinary case. The solemn assevera-tions of the 'parties in the bill and answer — both of which are sworn to — are positively contradicted and disproved by the previous repeated declarations of the parties. It is satisfactorily proved that the defendant, on different occasions, during the continuance of the business, distinctly admitted the interest of complainant as a partner, and that as such, he was entitled to a share of the profits. And, on the other hand, it is as fully established, that the complainant denied, more frequently, perhaps, that he had any interest whatever as partner; and asserted that he was merely a clerk, receiving a salary for his services.
Perhaps no case of conflicting evidence, of more difficult solution than the present can be imagined, if we look merely to the oral admissions and declarations of the parties. It is impossible to reconcile the statements of the parties with each other; and it is no less impossible to reconcile the statements of either, made prior to this suit, with his own allegations in the pleadings. The attempt to do so, would be alike pain *44 ful and fruitless. If there were nothing more in the case, we should feel driven to the necessity of resorting to the principle alike applicable in equity as at law, that the party asserting a claim or right against another, must establish such claim or right by competent and satisfactory proof; and the test of what is satisfactory proof, is the sufficiency of the evidence to satisfy the mind of the probable truth of the fact alleged, upon which the party grounds his right. If unable to do this, the judicial tribunal appealed to cannot do otherwise than dismiss his suit. But, it has been argued for the complainant with great ingenuity, that the supposed inconsistency of his previous declarations, with the sworn statement of the bill, is apparent rather than real, that such declarations are entitled to no force, and should not be permitted to prejudice his rights, because they are shown to be compatible with the intention of the parties, and the end to be accomplished — which was to secure the means of support for himself and family; and that to effect this end as against his creditors, it was a matter of absolute necessity, to conceal his true relation to the business, as partner, and to hold him out to the public in the relation of clerk merely.
This argument involves a conclusion as hard to be maintained, perhaps, in law, as in sound casuistry.
We fully assent to the correctness of the position assumed by the counsel for the complainant, that since the abolishment of the arrest or imprisonment of the body of a debtor, the creditor has no more power over the person, than over the will, of his debtor. He cannot be heard to' insist that his debtor shall apply himself to labor, either of mind or body, so as thereby *45 from his daily earnings, to accumulate a fund for the benefit of creditors. In law — however it may be in morals — the debtor may resign himself to hopeless and endless want, or he may limit his exertions to just such an extent as may be adequate to furnish him the means of a scanty subsistence; and in all this, he violates no legal right of his creditor. And, for the same reason, it would seem that he might in favor of his wife and children, create a sort of lien, so to speak, upon the earnings of his daily labor, for their maintenance, in defiance of creditors. And this might be blameless in morals as well as in law, under some circumstances.
The debtor is certainly under a moral obligation to use all reasonable exertions to satisfy the just claims of creditors; but he is under a positive obligation, in law as well as morals, to support and maintain his wife and infant children. This is his first and most imperative duty. But while this is so, and while he will be countenanced by the law in its proper discharge, he cannot make it the pretext for covering up and protecting from the just claims of creditors, any surplus fund accruing from his labor or vocation, whatever it may be. He has an election to labor or not, as he may please, with which the law will not interfere, so long as he keeps himself from without the scope and operation of such police regulations as, in the economy of every well ordered State, are deemed necessary. But beyond the necessary wants of his family, there is a limit which the law will not allow him to transcend. He cannot treasure up a fund, no matter from what source derived, and claim that it shall be protected for the ben *46 efit of himself or family, against the demands of creditors.
If the foregoing reasoning be correct, there existed no sufficient reason for concealment of the truth, or representation of an untruth, if nothing more were contemplated by the complainant’s connection with the business, than to obtain the means of an adequate support for his family; and if more than this was intended, and the concealment was a mere subterfuge, such intention must be regarded as a meditated fraud upon creditors. And from the complainant’s own showing, it is somewhat difficult to escape the latter conclusion; for, after $4,000 00 or upwards, had been received by him, which was about $1,000 00 a year, during the period he remained in the store, and double that sum had been withdrawn by the defendant, there still remained a neat balance of from ten to fourteen thousand dollars profits to be equally divided upon the assumption of the bill.
In this view, the argument denying the complainant a status in a Court of Equity, is plausible, to say no more of it. We do not, however, rest the decision of the case upon this ground alone, but mainly upon a different one. It has been already stated, that the notes executed by Zimmerman to McNairy and Hamilton, were transferred for the indemnity of N. A. Mc-Nairy. And the complainant in his bill alleges, that on the 13th of March, 1852, he and his former partner, to whom said notes were made, together with the personal representative of N. A. McNairy, filed a bill against Zimmerman to enforce the specific execution of the contract between the parties, and to have his stock *47 of drugs, medicines, &c., attached, for the purpose of discharging said notes; upon the express allegations that Zimmerman had failed to meet the payment of some of said notes, and that he .had declared freely his design to leave the State, and had offered to sell out his entire establishment with a view of doing so, and other charges of like import.
Zimmerman, in his answer to that bill, after an express denial of all the charges against him, made the following statement: “Respt,” by way of showing the great injustice done him , by the charges in the bill, states, that at the time this bill was filed, one of the complainants in the bill” (meaning Hamilton) “ was then in the house of resp’t as elerh, and .had full knowledge of the whole business of resp’t, and knew perfectly well that the debts resp’t owed the firm of McNairy and Hamilton were perfectly good, &c.” At the same time, Zimmerman filed a cross-bill, to obtain a credit for certain claims alleged to be due from McNairy and Hamilton to him.
And in his answer to said cross-bill, Hamilton, the present complainant, states, “that he has read carefully the answer of Zimmerman, and also Ms bill, and believes that the allegations in said answer and bill, are substantially true.”
This is at least an implied admission of the truth of the statement of Zimmerman — that Hamilton was merely his clerk. And for all the purposes of the present bill, the admission must be taken as true, without inquiring whether, as a matter of fact, it be so or not. The law, as against the complainant, presumes that it is true; and this presumption proceeds upon the *48 doctrine of estoppel, which, from motives of public policy or expediency, will not, in some instances, suffer a man to contradict or gainsay, what, under particular circumstances, he may have previously said or done. This doctrine is said to have its foundation in the obligation under which every man is placed to speak and act, according to the truth of the case; and in the policy of the law to suppress the mischiefs from the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that, which by their solemn and deliberate acts, they have declared to be true. And this doctrine applies with peculiar force, to admissions or statements made under the sanction of an oath, in the course of judicial proceedings. The chief security and safeguard for the purity and efficiency of the administration of justice, is to be found in the proper reverence for the sanctity of an oath.
Admissions or declarations made in pais, are often entitled to little or no consideration, because made inconsiderately or in ignorance of the facts, or not correctly understood or reported. And even when made with more deliberation, and under oath, it may be made to appear that they were made inconsiderately or by mistake; and if this be so, the party ought certainly to be relieved from the consequences of his error.
In the present instance, no explanation is given of the admission, either in the bill or in the proof. And it is vain to attempt to evade its force, by saying that the statement was an immaterial matter in the former suit, and therefore not likely to have challenged the attention of Hamilton, or to have been one of the *49 “allegations” the truth of which he intended to admit. As a matter of law, the statement may have been of no importance .in that cause; but as a matter of fact, from the obvious import of the statement, it was material to Hamilton, if the truth were. otherwise.
There are other inferences arising from the fact of filing the former bill, and from the allegations made, and the relief sought thereby, which, unexplained as they are, cannot fail to prejudice the complainant’s right to bring the present bill. But we leave the case, resting its determination mainly upon the legal principle, that the complainant is precluded by his admission, without undertaking to adjudge how the truth of the matter really is.
The entire costs of the cause will be equally divided between the parties.
Decree reversed, and bill dismissed.