IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 30, 2001 Session

## WALTER CHANDLER v. D. CANALE & CO., ET AL

Appeal from the Chancery Court for Shelby County
No. 103892-2     Floyd Peete, Jr., Chancellor

No. W2000-02067-COA-R3-CV - Filed May 25, 2001

Plaintiff appeals from a grant of summary judgment in favor of the defendants. The complaint alleged the plaintiff had a partnership with the defendants and accused the defendants of breach of contract. The trial court granted summary judgment for the defendants on the basis of judicial estoppel, concluding the plaintiff had previously testified under oath in prior litigation that he had no ownership interest in the business. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JOE G. RILEY, Sp. J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P. J., W. S., and DAVID R. FARMER, J., joined.

Fred M. Ridolphi, Jr., Memphis, Tennessee, for the appellant, Walter Chandler.

Oscar C. Carr, III and Jeffery A. Jarratt, Memphis, Tennessee, for the appellees, D. Canale & Co., et al.

### OPINION

This is an appeal by the plaintiff, Walter Chandler, from an order of the trial court granting summary judgment in favor of the defendants. Plaintiff brought suit alleging his business relationship with the defendants was a partnership. He alleged breach of contract, breach of good faith, breach of fiduciary duty, and breach of fair dealing, for which he sought an accounting, partition, and damages. Summary judgment was granted in favor of the defendants after the trial court ruled that there was no genuine issue of material fact, and the plaintiff was judicially estopped from asserting that he had an ownership interest in the disputed business, the Airkem distributorship. We affirm.

# BACKGROUND

The complaint alleges the following facts. In the early 1960's, the plaintiff and John Canale entered into a partnership or joint venture agreement to operate Airkem. Airkem is a distributorship and a division of D. Canale & Co., and was created as an industrial cleaning supply and janitorial service business. The parties were to share profits equally; John Canale advanced capital to the business; and the plaintiff repaid John Canale for his advance. The plaintiff was responsible for the daily operational and management decisions of the business. The defendants refused to pay plaintiff his equal share of the actual profits, and the defendants minimized and diminished the plaintiff's equal share by charging the partnership with non-related costs and expenses incurred by other D. Canale & Co. divisions.

The defendants' answer denied the existence of a partnership. It further asserted the plaintiff was an employee; he received 50% of the net profits as employee compensation; and the plaintiff was estopped from asserting the existence of a partnership.

In a deposition for the present litigation, when asked if he had "ever testified either by a deposition or in a trial . . . that [he] had no ownership in the Airkem Division," the plaintiff answered, "no." The plaintiff's sworn response was inaccurate since the plaintiff had testified in two previous lawsuits that he had no ownership interest in Airkem.

Chandler was deposed on August 25, 1986, and May 25, 1988, in Ferrell v. D. Canale and Company. In that suit, Ferrell was a former employee who sought damages for wrongful discharge. In Chandler's August 25, 1986, deposition, the following exchange took place:

> Question: [A]ll right, and the Airwick [sic] Division, is that a subsidiary or division of the D. J. [sic] Canale [Company]?
>
> Answer: I would say it's a division of D. Canale and Company.
>
> Question: Okay. And do you own part of that division or do you own part of D. J. [sic] Canale and Company?
>
> Answer: [W]hat I know is I've got a privilege-sharing profit [sic] with Mr. Canale.
>
> Question: So it is compensation?
>
> Answer: Yes, sir.
>
> Question: (continuing) . . . arrangement rather than an ownership?
>
> Answer: I own absolutely not one can down there.

Question:      All right.

Answer:      I wish I did.

On May 25, 1986, Chandler was again deposed in the <u>Ferrell</u> litigation, and the following exchange took place:

Question:      Have you had a chance to review your deposition before starting here today, Mr. Chandler?

Answer:      Briefly, yes.

Question:      In reviewing that deposition, was there anything in there that you noted that you think you need to clarify or change?

Answer:      No, I don't think so.

. . . .

Question:      Well, let me ask you this, what was the compensation basis for which you were to be compensated in the years 1983 through '85?

. . . .

Answer:      My arrangement with Mr. Canale is tied to the bottom line.

Question:      And that would be net profit?

Answer:      Yes, net profit of that division after expenses.

. . . .

Question:      What percentage or how were you to be compensated based upon the final figure in the bottom line?

Answer:      We had 50/50.

Chandler testified by deposition on November 1, 1991, in <u>Airkem Professional Products v. John J. Heirigs Construction Co.</u>  In that litigation, Airkem sued Heirigs Construction concerning payment for services rendered to Heirigs.  The following exchange took place during Chandler's sworn deposition testimony:

Question:      What is your position at D. Canale Company?

Answer: I manage the Airkem Division.

. . . .

Question: Is Airkem a totally owned entity which is a division of D. Canale?

Answer: It is.

Question: Is it a separate corporation or simply an operating division?

Answer: An operating division.

Question: Do you have any ownership interest in Airkem?

Answer: No.

Question: (continuing) or in D. Canale?

Answer: It is a family-owned business . . . . The Canales own the business.

Question: As manager of Airkem, who do you report to?

Answer: Me.

Question: You have no superior in the D. Canale organization?

Answer: Well, I would say Mr. Canale would be. [W]ell, he would be my superior, I guess.

The plaintiff later attempted to explain his prior sworn testimony, which was directly contradictory to his current allegation that he was a partner. The plaintiff stated:

I just didn't tell them. I didn't feel like it was any of their business. What John [Canale] and myself had together, I felt like that was confidential. We did not advertise the fact that he and I had a joint relationship, business venture . . . . I felt like that was of a confidential nature, and I didn't want to divulge it.

The plaintiff further explained his prior testimony:

Question: Mr. Chandler, before I ask you any questions about that, is that what you were trying to do in this case, get your wish to own a part of D. Canale's Airwick [sic] Division?

-4-

Answer:        I don't understand you.

Question:      In your previous testimony back in 1986, you testified that you don't even own a can down there.

Answer:        That's right.

Question:      But you wished you did.

Answer:        Sure.  At the time I wasn't about to tell anybody what kind of arrangement I had with John Canale.

Question:      You wanted to keep that a secret?

Answer:        Yes, I did.

Based upon the aforementioned testimony, the Chancellor granted the defendants' motion for summary judgment on the basis of judicial estoppel.

## SUMMARY JUDGMENT

The trial court's grant of summary judgment is not entitled to a presumption of correctness on appeal.  McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996).  We review *de novo* whether the requirements of Tenn. R. Civ. P. 56 have been met.  Mason v. Seaton, 942 S.W.2d 470, 472 (Tenn. 1997).  Pursuant to Rule 56, summary judgment may only be granted where there is no genuine, material factual dispute, and when the moving party is entitled to judgment as a matter of law.  Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).  When ruling on a motion for summary judgment, we must view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of the nonmoving party and discarding all countervailing evidence.  White v. Lawrence, 975 S.W.2d 525, 529 (Tenn. 1998).

## JUDICIAL ESTOPPEL

### A.  Doctrine of Judicial Estoppel

Judicial estoppel arises from "sworn statements made in the course of judicial proceedings, generally in a former litigation, and [is] based on public policy upholding the sanctity of an oath and not on prejudice to [an] adverse party by reason thereof, as in the case of equitable estoppel."  Allen v. Neal, 396 S.W.2d 344, 346 (Tenn. 1965) (citing Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 650, 266 S.W. 313 (1924)); *see also* Marcus v. Marcus, 993 S.W.2d 596, 602 (Tenn. 1999).  The doctrine of judicial estoppel also applies to sworn testimony given in a deposition.  *See* Shell v. Law,

935 S.W.2d 402, 408 (Tenn. Ct. App. 1996) (citation omitted).  Furthermore, the purpose of judicial estoppel "is to safeguard the administration of justice by placing a restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings."  Melton v. Anderson, 32 Tenn. App. 335, 222 S.W.2d 666, 669 (1948) (citation omitted).  The policy underlying the doctrine is to prevent a party from gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits.  Carvell v. Bottoms, 900 S.W.2d 23, 30 (Tenn. 1995).  Anything short of a willfully false statement is insufficient to invoke judicial estoppel.  State ex. rel. Scott v. Brown, 937 S.W.2d 934, 936 (Tenn. Ct. App. 1996) (citations omitted).

## B.  Analysis

In three prior depositions, the plaintiff testified that he had no ownership interest in the Airkem business.  However, the plaintiff argues that judicial estoppel is inapplicable because (1) he and the defendants did not have adversarial positions in the prior cases; (2) his literal responses in the prior litigation are not in conflict with his current claim of the existence of a partnership or joint venture; (3) he was not a litigant in the prior litigation; (4) ownership of Airkem was not at issue in the prior litigation; and (5) he adequately explained his inconsistent testimony by showing that his prior testimony was not "a willfully false statement of fact."  We reject the plaintiff's assertions.

The plaintiff erroneously contends that judicial estoppel is inapplicable because he and the defendants were not in adversarial positions in the prior litigation.  We find no authority in this state, nor does the plaintiff cite any, that requires the party seeking judicial estoppel to have been in an adversarial position in the prior proceeding with the party testifying falsely.  Such a requirement would be contrary to the purpose of judicial estoppel, for this jurisdiction's strong public policy of "upholding the sanctity of an oath" is not dependent upon whether the parties had adversarial positions.  *See generally* Allen, 396 S.W.2d at 346 (citations omitted).

Next, the plaintiff contends that his literal responses to the questions asked in his prior depositions were not contrary to his current position.  The plaintiff's prior testimony speaks for itself and is clear and unambiguous.  A review of the depositions reveals that the plaintiff clearly attested on three separate occasions that he had no ownership interest in the Airkem distributorship.

The plaintiff next contends that judicial estoppel is inapplicable because he was not a litigant in the two prior cases.  Although plaintiff was not a named litigant in the prior litigation, this position is a double-edged sword for the plaintiff.  If the Airkem distributorship was indeed a partnership as he now claims, then he was, or certainly could have been named as, a litigant in the prior Ferrell suit against Airkem.

However, the plaintiff's argument fails, additionally, because the applicability of judicial estoppel does not depend upon whether the falsely attesting person was a named litigant in the prior suit.  "[W]here *one states* on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation,

*although the parties may not be the same*." <u>Shell</u>, 935 S.W.2d at 408 (emphasis added) (citations omitted). We find no authority in this state, nor does the plaintiff cite any, that requires the party being estopped to have been a named litigant in the prior proceeding in which the party testified falsely. Again, such a requirement would be contrary to the purpose of judicial estoppel. *See generally* <u>Allen</u>, 396 S.W.2d at 346 (citations omitted).

The plaintiff next asserts that judicial estoppel is inapplicable because ownership of the Airkem distributorship was not at issue in the prior litigation. Although ownership may not have been an issue in the prior <u>Heirigs</u> litigation where Airkem was the plaintiff, the ownership of the Airkem distributorship was certainly relevant in the prior <u>Ferrell</u> suit where Airkem was the defendant. In the <u>Ferrell</u> suit Chandler could have been named as a party and would have potential personal liability. Members of a partnership are jointly and severally liable for liabilities incurred within the scope of the partnership. *See* Tenn. Code Ann. § 61-1-114(a) (Supp. 2000). Thus, it is appropriate to prevent the plaintiff from "gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits." <u>Carvell</u>, 900 S.W.2d at 30.

The plaintiff's final argument is that judicial estoppel is inapplicable because he adequately explained his inconsistent testimony by showing that his prior testimony was not "a willfully false statement of fact." The plaintiff testified that he "felt like [the partnership] was of a confidential nature, and [he] didn't want to divulge it." He further stated he "wasn't about to tell anybody what kind of arrangement [he] had with John Canale" and wanted to keep that a secret. This explanation clearly demonstrates that the plaintiff's prior false testimony was deliberate and willful. The plaintiff's alleged desire to conceal the nature of his business relationship is not an adequate explanation for false testimony.

In <u>Hamilton v. Zimmerman</u>, 37 Tenn. 39 (1857), our supreme court applied judicial estoppel in a nearly identical situation. In <u>Hamilton</u>, the plaintiff alleged that he was a secret partner with the defendant pursuant to a verbal agreement. The defendant denied the existence of a partnership. Our supreme court held that the plaintiff was judicially estopped from asserting the existence of a partnership due to admissions he made in a sworn pleading in a prior lawsuit, where he denied the existence of a partnership. *Id.* at 47. The court further stated "[t]he chief security and safeguard for the purity and efficiency of the administration of justice is to be found in the proper reverence for the sanctity of an oath." *Id.* at 48. Although some policy concerns may have changed since <u>Hamilton</u> was decided just prior to the Civil War, the goal of promoting truth in sworn testimony is as viable today as it was 150 years ago.

**CONCLUSION**

The granting of summary judgment in favor of the defendants is affirmed. Costs of appeal are assessed against the plaintiff-appellant, Walter Chandler, and his surety, for which execution may issue if necessary.

-7-

_____
JOE G. RILEY, SPECIAL JUDGE