# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 6, 2019 Session

## POLLY SPANN KERSHAW v. JEFFREY L. LEVY

**Appeal by Permission from the Court of Appeals
Circuit Court for Davidson County
No. 07C1757          William B. Acree, Senior Judge**

———————————————————

**No. M2017-01129-SC-R11-CV**

———————————————————

We granted permission to appeal in this case to clarify application of the doctrine of judicial estoppel. The plaintiff filed this legal malpractice action against an attorney who represented her in her divorce. She asserts that the attorney's actions so compromised her position in the divorce proceedings that she was forced to settle on unfavorable terms. After the attorney filed a motion for summary judgment, the trial court applied the doctrine of judicial estoppel. Citing the plaintiff's sworn acknowledgment in her marital dissolution agreement that the divorce settlement was "fair and equitable," the trial court held that the plaintiff was estopped from asserting in the legal malpractice action that the divorce settlement terms were unfavorable. On this basis, the trial court granted summary judgment to the defendant attorney. The Court of Appeals affirmed. We hold that the trial court should not have applied the doctrine of judicial estoppel to the statements at issue because they are not directly contradictory statements of fact. The plaintiff's sworn acknowledgment in her marital dissolution agreement is instead a context-related legal conclusion, and the plaintiff offers a reasonable explanation for any apparent discrepancy between her sworn acknowledgment in the divorce and her assertions in this legal malpractice action. As a result, we hold that the trial court erred in granting summary judgment on the basis of judicial estoppel. We reverse the grant of summary judgment and remand the case for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgments of the Circuit Court and the Court of Appeals Reversed;
Case Remanded to the Circuit Court for Davidson County**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the Plaintiff/Appellant, Polly Spann Kershaw.

Jeffrey J. Switzer, Nashville, Tennessee, for the Defendant/Appellee, Jeffrey L. Levy.

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

Beginning in November 2006, Defendant/Appellee Jeffrey L. Levy represented Plaintiff/Appellant Polly Spann Kershaw in her divorce. Mr. Levy represented Ms. Kershaw for a period of about seven months.[1]

By the time Ms. Kershaw retained Mr. Levy, the divorce proceedings had been contentious for some time. The divorce court[2] had already held Ms. Kershaw in contempt once, and a second petition for contempt was pending against her.[3] Discovery requests were outstanding, and Ms. Kershaw had not yet responded.

In the prior contempt proceedings, the divorce court imposed sanctions on Ms. Kershaw. The sanctions consisted of granting Ms. Kershaw's husband a default judgment on his divorce complaint, striking all of Ms. Kershaw's pleadings, and barring Ms. Kershaw from asserting any defenses to the husband's claims.

After Ms. Kershaw retained Mr. Levy, the divorce court extended the deadline for Ms. Kershaw to respond to the pending discovery. It also apparently agreed to lift the sanctions, provided Ms. Kershaw timely filed her discovery responses.

---

[1] Because the procedural history in this case is convoluted, we include only the case history that is pertinent to the issue in this appeal. Mr. Levy admits many of the facts only for purposes of the summary judgment motion. He denies any negligence or malfeasance in his representation of Ms. Kershaw.

[2] We refer to the trial court in the underlying divorce action as the "divorce court," to distinguish it from the trial court in this appeal.

[3] Generally, the contempt proceedings related to allegations that Ms. Kershaw forged checks on her husband's bank account and used the proceeds to gamble. The criminal contempt judgments were later vacated as part of the divorce settlement. The parties' briefs include arguments related to Ms. Kershaw's contempt convictions, but we have determined that we need not discuss them to resolve the issue in this appeal.

Mr. Levy mailed Ms. Kershaw's discovery responses to opposing counsel. Later, Ms. Kershaw's husband claimed to the divorce court that Ms. Kershaw's discovery responses were not timely filed. Mr. Levy responded by saying that he put Ms. Kershaw's discovery responses in the mail on the day of the deadline. This representation turned out to be false. Opposing counsel provided the divorce court with Ms. Kershaw's postmarked discovery responses, which indicated that Mr. Levy actually mailed them two days after the extended discovery deadline.

After determining that Ms. Kershaw's discovery responses were in fact not timely, the divorce court reinstated the sanctions against Ms. Kershaw. Thus, it awarded the husband a default judgment of divorce, accepted the husband's alleged facts and claims as true, struck Ms. Kershaw's pleadings, and barred Ms. Kershaw from raising any defenses. The divorce court also awarded attorney fees to the husband.

Perhaps not surprisingly, Mr. Levy withdrew as counsel of record. Ms. Kershaw retained new counsel and entered into mediation on her divorce.

Before the divorce was finalized, Ms. Kershaw filed the instant legal malpractice action against Mr. Levy. The trial court temporarily stayed the legal malpractice action, pending resolution of Ms. Kershaw's divorce. It lifted the stay when the divorce was settled and finalized.

In the malpractice action against Mr. Levy, Ms. Kershaw contended that the divorce court reinstated the sanctions against her because Mr. Levy failed to timely file the discovery responses and then misrepresented when he mailed them. She asserted that Mr. Levy's actions caused her to lose possession of her home, lose primary custody of her children, owe various judgments and fees to the husband, and face the prospect of a divorce trial with no prayer for relief. She claimed that Mr. Levy's actions so compromised her position that she had no negotiating leverage; as a result, she was left with little choice but to agree to an unfavorable divorce settlement.

In settling her divorce, Ms. Kershaw and her husband signed a marital dissolution agreement (MDA). The MDA included the following provision:

> Each party represents to the other and acknowledges that this Agreement is entered into without undue influence, fraud, coercion, or misrepresentation, or for any reason not herein stated. The provisions in this Agreement and their legal effect are fully known by each of the parties, and *each party*

*acknowledges that the Agreement is fair and equitable and that it is being entered into voluntarily and with advice of counsel.*

The MDA also vacated the contempt judgments and sentences against Ms. Kershaw. The signatures of both Ms. Kershaw and her husband were notarized. The MDA was incorporated into the November 21, 2007 final decree of divorce.

After Ms. Kershaw settled her divorce, Mr. Levy filed a motion for summary judgment in the instant legal malpractice action. The motion argued that the trial court should apply the doctrine of judicial estoppel to Ms. Kershaw's claim that his negligence forced her to agree to unfavorable divorce terms because the above-quoted MDA acknowledgment attested to the fairness and equity of the settlement. If Ms. Kershaw were unable to claim that her divorce settlement was unfair, Mr. Levy's theory went, she could not establish that she had been harmed by his alleged negligence in representing her.

The trial court granted summary judgment to Mr. Levy. It reasoned that Ms. Kershaw "signed the marital dissolution agreement under oath. [Ms. Kershaw] voluntarily agreed to a divorce settlement which she acknowledged to be fair and equitable. Thus, she is judicially estopped from claiming in this suit that the settlement was not fair and equitable." On this basis, the trial court dismissed Ms. Kershaw's complaint.

Ms. Kershaw appealed, and the Court of Appeals affirmed. *Kershaw v. Levy*, No. M2017-01129-COA-R3-CV, 2018 WL 2126808 (Tenn. Ct. App. May 8, 2018), perm. app. granted (Sept. 18, 2018). Ms. Kershaw sought permission to appeal to this Court, arguing that the trial court erred in dismissing her complaint on the basis of judicial estoppel. We granted Ms. Kershaw's application for permission to appeal in order to address that issue. *See Hodge v. Craig*, 382 S.W.3d 325, 333–34 (Tenn. 2012) (footnote omitted) ("The scope of our review . . . depends, in large part, on the issues that the parties have presented to this Court.").

## STANDARD OF REVIEW

In this appeal, Ms. Kershaw asks us to determine whether the trial court properly granted summary judgment to Mr. Levy. We review a lower court's decision on a summary judgment motion de novo with no presumption of correctness. *Beard v. Branson*, 528 S.W.3d 487, 494–95 (Tenn. 2017) (citations omitted). "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and

- 4 -

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting Tenn. R. Civ. P. 56.04).

Ms. Kershaw argues in this appeal that the trial court misapplied the doctrine of judicial estoppel; this issue presents a question of law, which is also reviewed de novo. *Frazier v. Pomeroy*, No. M2005-00911-COA-R3CV, 2006 WL 3542534, at *10 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn. 1995); *Terrell v. Terrell*, 292 S.W.2d 179, 182 (Tenn. 1956)) (Tenn. Ct. App. Dec. 7, 2006) ("A trial court's application of the doctrine of judicial estoppel presents a question of law which this court reviews de novo.").

## ANALYSIS

The doctrine of judicial estoppel has long been applied in Tennessee.[4] *McLemore v. Memphis & C.R. Co.*, 69 S.W. 338, 344 (Tenn. 1902) ("The law of judicial estoppel is firmly established in this state . . . ."). In general, "[u]nder the doctrine of judicial estoppel 'a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts. . . .'" *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999) (quoting *Obion County v. McKinnis*, 364 S.W.2d 356, 357 (Tenn. 1962)).

The purpose of judicial estoppel "is not to protect the parties from allegedly dishonest conduct by the adversary." John S. Nichols, *Safeguarding the Truth in Court: The Doctrine of Judicial Estoppel*, 13 S.C. Law. 32, 34 (2002) (citations omitted). Rather, "the doctrine acts to ensure the integrity of the judicial process." *Id.*; *see also Allen v. Neal*, 396 S.W.2d 344, 346 (Tenn. 1965) (citation omitted) (describing judicial estoppel as "not [based] on prejudice to adverse party by reason thereof, as in the case of

---

[4] Apparently, Tennessee was the first state to apply the doctrine of judicial estoppel, in *Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39 (1857). *See Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 879 (N.C. 2004) (citing William Houston Brown, *Debtor's Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums*, 75 Am. Bankr. L.J. 197, 200 (2001)) ("[L]egal scholars generally agree that the concept of judicial estoppel was first applied in *Hamilton v. Zimmerman*, 37 Tenn. 39 (1857)."); Randy G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U.L. Rev. 1244, 1245 (1986) (the doctrine was "originally formulated by the Tennessee Supreme Court"); Douglas W. Henkin, *Judicial Estoppel—Beating Shields into Swords and Back Again*, 139 U. Pa. L. Rev. 1711, 1713 (1991) (same). The United States Supreme Court recognized judicial estoppel in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

equitable estoppel."); *Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313, 317 (Tenn. 1924) ("[J]udicial estoppel . . . has nothing to do with other parties to the suit; nor does it matter whether they even knew of the sworn statement."). Thus, unlike equitable estoppel, which "focuses on the relationship between the parties," judicial estoppel "focuses on the relationship between a litigant and the judicial system." 31 C.J.S. *Estoppel and Waiver* § 189 (June 2019 Update); *see also Cracker Barrel Old Country Store v. Epperson*, 284 S.W.3d 303, 315 (Tenn. 2009) (comparing judicial estoppel with equitable estoppel).

In general, "[e]stoppels are not favored in the law." *Sturkie v. Bottoms*, 310 S.W.2d 451, 453 (Tenn. 1958). Tennessee has narrowed application of judicial estoppel to circumstances in which "a party has attempted to contradict by oath a sworn statement previously made." *Cracker Barrel Old Country Store*, 284 S.W.3d at 315 (citing *Allen*, 396 S.W.2d at 346).[5] Tennessee cases describe judicial estoppel as based on "public policy which upholds the sanctity of an oath. . . ." *Sartain*, 266 S.W. at 317 (adding that the doctrine "might well be termed 'estoppel by oath.'").

Thus, the doctrine of judicial estoppel prohibits litigants from "contradict[ing] by oath a sworn statement previously made." *Cracker Barrel Old Country Store*, 284 S.W.3d at 315 (citing *Allen*, 396 S.W.2d at 346). "The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar." *Sartain*, 266 S.W. at 318.

Judicial estoppel is an equitable doctrine, so the circumstances under which it applies "are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750. At the very least, however, the statements being compared must be "clearly inconsistent." *Id.* The doctrine of judicial estoppel does not apply when there is "an innocent inconsistency or apparent inconsistency that is actually reconcilable." 28 Am. Jur. 2d *Estoppel and Waiver* § 68 (footnote omitted). The two sworn statements "must be totally inconsistent—that is, the truth of one . . . must necessarily preclude the truth of the other. . . ." *Id.*; s*ee, e.g., Brown v. Brown*, 281

---

[5] Not all states do so. *See* 31 C.J.S. *Estoppel and Waiver* § 192 (collecting cases). The United States Supreme Court describes judicial estoppel as applicable when a party "assumes a certain position in a legal proceeding," succeeds in that position, and then "assume[s] a contrary position" in a later proceeding. *New Hampshire*, 532 U.S. at 749. North Carolina has described Tennessee as an outlier in this regard. *Whitacre P'ship*, 591 S.E.2d at 879 (citations and internal quotation marks omitted) ("Although the Tennessee courts continue to apply this narrow version of the doctrine, most modern authorities agree that the purpose of judicial estoppel is to protect the integrity of the judicial process, not just the sanctity of the oath. . . .").

S.W.2d 492, 502 (Tenn. 1955) (citing *Sartain*, 266 S.W. 313); *Hamilton*, 37 Tenn. at 43 ("It is . . . impossible to reconcile the statements of either [litigant], made prior to this suit, with his own allegations in the pleadings."); *Barnes v. Barnes*, No. E2003-00070-COA-R3-CV, 2004 WL 115148, at *1, 6 (Tenn. Ct. App. Jan. 23, 2004) (judicial estoppel not applicable because party had reasonable explanation for asserting that he divorced his first wife in 1950 and also in 1988); *Davis v. Mitchell*, 178 S.W.2d 889, 897 (Tenn. Ct. App. 1943) ("[Judicial estoppel] can never find application unless there has been what is equivalent to a specific and cat[e]gorical denial of that which has been affirmed, unaccompanied by any reasonable explanation of the discrepancy.").

Moreover, because Tennessee limits judicial estoppel to sworn statements, its application in this State is usually warranted only if there are directly contradictory statements of *fact*.[6] *See Brown*, 281 S.W.2d at 502 ("[I]n order for [judicial estoppel] to be applicable the party against whom the estoppel is urged must have made a statement of fact under oath which he later seeks to contradict."); *Tate v. Tate*, 148 S.W. 1042, 1053 (Tenn. 1912) ("[J]udicial estoppel arises . . . where one states on [o]ath, in a former litigation, either in a pleading, or in a deposition, or in oral testimony, a given fact as true, he will not be permitted to deny that fact in a subsequent litigation."); *Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997) (citing *Brown*, 281 S.W.2d at 502)) ("[T]he party against whom the estoppel is urged must have made a statement of fact under oath that he or she later seeks to contradict.").

For instance, in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), the Supreme Court held that judicial estoppel should not be applied because the petitioner's statements about whether she was disabled did not "involve directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.'" *Id*. at 802;[7] *see, e.g., Brown*, 281 S.W.2d

---

[6] When the inconsistency relates to matters "other than the purely factual," such as purely legal positions and mixed questions of fact and law, courts are divided on "whether judicial estoppel applies." Kira A. Davis, *Judicial Estoppel and Inconsistent Positions of Law Applied to Fact and Pure Law*, 89 Cornell L. Rev. 191, 193 (2003).

[7] Courts make fact-law distinctions in other contexts. For example, one commentator on double jeopardy describes factual determinations as "assessments of what actually occurred, in a historical or scientific sense. '[Factual] assertions . . . generally respond to inquiries about who, when, what, and where—inquiries that can be made 'by a person who is ignorant of the applicable law.'" Forrest G. Alogna, *Double Jeopardy, Acquittal Appeals, and the Law-Fact Distinction*, 86 Cornell L. Rev. 1131, 1154–55 (2001); *see also Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002) (describing, in the context of a discussion of standards of review, "a pure question of fact" as a "'who did

at 502 (holding judicial estoppel not applicable because the party against whom estoppel was urged did "not seek to deny any statement of fact made in the original divorce suit."); *Willis v. Willis*, 62 Tenn. (3 Baxt.) 183, 184–85 (1873) (judicial estoppel applicable where claimant first made sworn statement regarding his brother's estate that a debt had already been paid, and then filed suit to collect same debt from the brother's widow); *Hamilton*, 37 Tenn. at 40–41, 47–49 (judicial estoppel applied where claimant first made sworn statement that he was merely defendant's clerk, and then filed suit alleging he was defendant's secret partner); *Boyce v. LPP Mortgage Ltd.*, 435 S.W.3d 758, 771 (Tenn. Ct. App. 2013) (inappropriate to apply judicial estoppel to changed legal position rather than inconsistent sworn statements); *Chandler v. D. Canale & Co.*, No. W2000-02067-COA-R3-CV, 2001 WL 568027, at *1, 4–5 (Tenn. Ct. App. May 25, 2001) (judicial estoppel barred plaintiff from asserting partnership interest in disputed entity after denying existence of such partnership interest under oath in two prior lawsuits).

Here, Mr. Levy compares Ms. Kershaw's sworn statement in her MDA, acknowledging that her divorce settlement was fair and equitable, with the sworn discovery responses and deposition testimony in support of her malpractice claim, in which she asserts that Mr. Levy's actions forced her to agree to unfavorable divorce settlement terms. He argues that Ms. Kershaw's sworn statements in the legal malpractice action are "directly contrary" to the sworn statement in the MDA, so the doctrine of judicial estoppel should bar her from asserting that her divorce settlement was unfavorable. Because Ms. Kershaw suffered no damage from his alleged negligence, Mr. Levy asserts, the trial court properly granted summary judgment in his favor.

In response, Ms. Kershaw maintains that her statements are not contradictory. In the malpractice action, Ms. Kershaw's affidavit claims that Mr. Levy's negligence caused the trial court to reinstate the considerable sanctions imposed on her. She argues that this action left "Ms. Kershaw's position materially changed due to Mr. Levy's negligence" and as a result she "did not have any options." By the time she hired a new lawyer to replace Mr. Levy and entered the divorce mediation, Ms. Kershaw said in her affidavit, "I was facing 28 days in jail on the contempt; had not seen my children in nearly a year; had no pleadings before the Court; and knew there had been gross dissipation of assets. These circumstances limited [m]y ability to negotiate." Ms. Kershaw argues that she "was compelled to resolve her divorce in a compromised position after [Mr.] Levy damaged her case."

---

what where when and to whom' kind of question, 'pure' in the sense that no legal knowledge or instruction is necessary to answer it").

The statements by Ms. Kershaw are not the type of sworn statements that are proscribed under the doctrine of judicial estoppel. First, her acknowledgment in the MDA that the divorce settlement was "fair and equitable" is not a factual assertion such as "The light was red" or "The light was green."[8] *Cleveland*, 526 U.S. at 802; *see e.g.*, *Lockhart v. Lockhart*, No. W2000-02922-COA-R3CV, 2002 WL 1349500, at \*5–6 (Tenn. Ct. App. 2002) (applying judicial estoppel where litigant first made sworn statement that her ex-husband was father of child at issue, and later denied ex-husband was father of same child); *Johnson v. Tramell*, 15 Tenn. App. 607, 608, 611–12 (1932) (applying judicial estoppel where complainant first swore piece of land was owned by another, and then filed suit asserting ownership of same land).

Ms. Kershaw's acknowledgment that the MDA is fair and equitable "differs from a purely factual statement in that it . . . implies a context-related legal conclusion." *Cleveland*, 526 U.S. at 802; *see also Tate*, 148 S.W. at 1054 ("[Judicial] estoppel does not apply to mere conclusions of law upon undisputed facts."). In the MDA, Ms. Kershaw acknowledged that the agreement was "fair and equitable" given the circumstances in which she found herself. Those circumstances, however, she lays at Mr. Levy's feet; she contends that Mr. Levy's actions severely compromised her divorce negotiating position.

Moreover, the acknowledgment in the MDA and Ms. Kershaw's assertions in her legal malpractice claim are not totally inconsistent. The truth of the acknowledgment in the MDA does not "necessarily preclude the truth of" Ms. Kershaw's statements in her legal malpractice action. Am. Jur. 2d *Estoppel and Waiver* § 68 (citations omitted). Instead, this is an "apparent inconsistency that is actually reconcilable." *Id*. (citations omitted).[9] Ms. Kershaw in fact gives a "reasonable explanation of the discrepancy." *Davis*, 178 S.W.2d at 897. Thus, the MDA acknowledgment and the legal malpractice claim "can comfortably exist side by side." *Cleveland*, 526 U.S. at 803.[10]

---

[8] *Cf. Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*, 746 F. App'x 1, 19 (D.C. Cir. 2018) (citation omitted) ("Further, 'competency' . . . is a 'vague or vacuous term[ ]—such as "fair and equitable," . . . and the like . . . .'").

[9] *Cf. Walden v. Walden*, 13 Tenn. App. 337, 342 (1930) (declining to apply judicial estoppel because sworn statement valuing a particular property as $50,000 was not contradicted by subsequent sworn statement valuing same property at $65,000, because both estimates were based on then-available information).

[10] *See Parnell v. Ivy*, 158 S.W.3d 924, 927 (Tenn. Ct. App. 2004) ("[T]he injuries suffered by a plaintiff in a legal malpractice suit are separate and distinct from those suffered in the underlying suit.").

For these reasons, we respectfully conclude that the trial court erred in applying the doctrine of judicial estoppel to Ms. Kershaw's legal malpractice claim against Mr. Levy.  Accordingly, we reverse the grant of summary judgment to Mr. Levy.

## CONCLUSION

We hold that the doctrine of judicial estoppel does not apply to the statements at issue in this appeal.  Thus, the trial court erred in holding that judicial estoppel precluded Ms. Kershaw's legal malpractice claim against Mr. Levy.  We reverse the trial court's grant of summary judgment to Mr. Levy and remand for further proceedings.  Costs of this appeal are taxed to Mr. Levy, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE

- 10 -